ANN CALLAHAN, administratrix, *vs.* TRUSTEES OF
PHILLIPS ACADEMY.

Essex.    November 7, 1901. — December 31, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & LORING, JJ.

*Negligence*, In furnishing materials for a staging.

In an action for injuries caused by the breaking of a ledger-board supporting a
staging on which the plaintiff was standing while painting the ceiling of a
building of the defendant, it appeared, that the plaintiff was in the employ of
a master painter who had been employed by the agent of the defendant who
had charge of its buildings to do the interior decorating of the building, that
when ready to go to work, the master painter told the defendant's agent that
he should have to have a carpenter to build a staging, that the agent said
his carpenters were busy at work on another building and the painter would
have to build the staging himself, that the painter then asked what he should
do for lumber, and the agent pointed out two piles of lumber from which the
painter could take what he wanted, that thereupon the painter picked out
from one of the piles what lumber he needed for the staging in addition to that
which he furnished himself, that the ledger-board that broke was one of those
selected from the pile, that it was a hemlock board seven or eight feet in length,
five inches wide and seven eighths of an inch thick, and that hemlock is not a
suitable wood to use for ledger-boards. *Held*, that there was no evidence on
which a jury would be justified in finding that the defendant agreed to furnish
the staging, or that it did furnish it, or that it invited the plaintiff to use it when
completed ; and, assuming that by permitting the master painter to take
boards from the two piles to be used in making the staging the defendant came
under a duty to the plaintiff, the plaintiff in order to show a violation of that
duty must prove that there were not boards in the two piles from which a proper
staging could be made, and, this not being shown, the plaintiff could not recover.

TORT for injuries sustained by Michael Callahan, the plain-
tiff's intestate, while in the employ of one Edgecomb J. Rowe
by a fall caused by the giving way of a staging alleged to have
been built of unsafe and unsuitable materials negligently fur-
nished by the defendant.    Writ dated May 31, 1900.

In the Superior Court, before *Sheldon*, J., at the close of the
evidence on both sides, the judge at the request of the defendant
directed a verdict for the defendant, and, at the request of the
plaintiff, reported the case for the consideration of this court.
If the ruling was correct judgment was to be entered on the

verdict; otherwise, the verdict was to be set aside and a new trial ordered.

*J. J. Mahoney*, for the plaintiff.

*H. P. Moulton*, (*E. B. Bishop* with him,) for the defendant.

LORING, J. In this case, the plaintiff was thrown to the ground from a staging on which he was standing while painting the ceiling of the defendant's library at Andover. The cause of the accident was the giving way of a ledger-board which supported the planks of the staging on which he was standing at the time.

The plaintiff was in the employ of one Rowe, a painter in Andover, who had been previously employed from time to time by the defendant corporation to paint its buildings. One Grant, who was the superintendent of the defendant's buildings at Andover, asked Rowe to do the interior decoration of the library building; and thereupon he went to work and "although he knew that a staging would be required he did not say anything about one to Grant until he, Rowe, was ready to go to work." Rowe testified, that when he was ready to go to work, he said to Grant, "I will have to have a carpenter to build the scaffold; 'Well,' he says, 'My carpenters are busy over to the Pike barn and you will have to build that scaffold yourself.' " Rowe then asked what he was going to do for lumber, and Grant told him that there was "plenty of stuff out back of the barn you can use, and there is some over in the woods." Thereupon Rowe, with two of his men, picked out from the pile back of the barn, what they needed in addition to the lumber, which Rowe furnished himself; Rowe furnished the planks on which the men using the staging stood. There was evidence that the ledger-board in question was a hemlock board, planed on one side, some seven or eight feet in length, five inches wide, and seven eighths of an inch thick, and that hemlock is not suitable wood to use for ledger-boards. It further appeared that in doing this work Rowe "took what paint was needed from the defendant corporation's storehouse. . . . He had at times as many as thirty-five men at work at once on this job; that time cards were furnished him by Grant, that he filled them out, one for each man, and handed them in each day; that he, Rowe, hired, discharged, and paid his men, including Callahan; that the defendant corporation gave no directions to him in re-

gard to his men; that he was paid at the rate of so much a day for himself and each of his men, and. that when this job was finished he put in one bill for the whole thing and was paid; that the defendant corporation had never hired him by the month or the year or anything of that kind." It also appeared from the testimony of Grant that no directions were given to Rowe by him or any one else in regard to the way in which the work should be done on the library. Rowe testified that he and Grant talked over the colors; Grant testified that the color was not selected by him.

The plaintiff's first contention is that the jury could have found for him on the principle of *Mulchey* v. *Methodist Religious Society*, 125 Mass. 487; but there was no evidence in this case, on which the jury could have found that the defendant invited the plaintiff to use a staging, which was to be furnished by it for use in painting the library ceiling. When Rowe was first asked to do the painting in question, nothing was said as to who should furnish the scaffold or staging. When Rowe was ready to go to work, he asked Grant to furnish it, but Grant refused to do so, saying that his carpenters were busy; thereupon Rowe put it up, using some boards belonging to the defendant for the uprights and the ledger-boards, and furnishing himself the planks on which the men were to stand. There was no evidence on which the jury were justified in finding that the defendant agreed to furnish the staging, or that the defendant did furnish it, or that it invited the plaintiff to use it when it was complete.

This also disposes of the plaintiff's second contention, namely, that he has introduced evidence which brings this case within *Toomey* v. *Donovan*, 158 Mass. 232. In that case, there was direct evidence that it was the duty of the defendant to repair the machines in the room where the plaintiff worked, including the machine in question, which was out of repair and which caused the accident because it was out of repair. As we have already said, there was no evidence here on which the jury could have found that the defendant undertook to furnish the staging used by the plaintiff.

The plaintiff's next contention is that the jury could have found for him on the principle on which the plaintiff was entitled to recover at common law in *Twomey* v. *Swift*, 163 Mass. 273.

The defendant contends that the plaintiff cannot recover upon that principle because the plaintiff was not in its employ, and relies upon *Dane* v. *Cochrane Chemical Co.* 164 Mass. 453, in support of its contention that the plaintiff was not in its employ. But even if the plaintiff was not in the defendant's employ, it is not clear that the defendant did not owe him a duty in the premises. It may be assumed that the defendant came under a duty to the plaintiff by permitting Rowe, under the circumstances stated, to take boards from the two piles, or either of them, to be used in making the staging; if the defendant did come under a duty to the plaintiff, the burden was on the plaintiff to prove a violation by the defendant of that duty, and to prove a violation of that duty he had to prove that there were not boards in the two piles from which a proper scaffolding could be made. *Kalleck* v. *Deering*, 169 Mass. 200, 204. There was no evidence on which the jury could have found that the plaintiff had supported the burden of proving this fact. Thompson, one of the plaintiff's witnesses, testified that "if the ledger in question had been considered unsafe another could have been substituted from the material left over"; and Rowe, the only other witness of the plaintiff who testified on the subject, testified that "there would have been no difficulty in substituting another ledger or in re-enforcing it if he had suspected that it was weak." And there was nothing to the contrary in the testimony of the other witnesses called by the plaintiff nor in that of the only witness called by the defendant; moreover, it affirmatively appeared that Rowe did not take away any boards from the pile in the woods and only one third of those in the pile back of the barn; and further, that all of that taken from the pile back of the barn was not used; and lastly, there was no evidence that hemlock boards seven eighths of an inch thick were the only kind of boards in these two piles. In this respect, this case is not like *Twomey* v. *Swift*, 163 Mass. 273; in that case it was proved that the only boards furnished by the defendant for ledger-boards were hemlock boards seven eighths of an inch thick, and that such boards were unfit for the purpose.

The plaintiff also relies on *McIntyre* v. *Boston & Maine Railroad*, 163 Mass. 189. In that case, it was the duty of the defendant to furnish suitable stakes for its flat cars. When such a

duty exists, the plaintiff makes out a case by proving that the stake in question was furnished by the defendant and was unfit, although the defendant had furnished plenty of lumber from which good stakes could have been made.

*Exceptions overruled.*