WILLIAM THOMPSON *vs.* CITY OF WORCESTER.

Worcester.  September 29, 1903. — November 25, 1903.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Negligence.  Municipal Corporations.  Evidence,* Opinion, Experts.

In an action against a city for personal injuries from the breaking of a plank on which the plaintiff was working with another man, both of them belonging to a gang of city employees engaged in setting up a portable overhead railway to be used for carrying buckets in excavating a trench to hold a sewer pipe, it appeared, that there was a knot as large as the palm of a man's hand in the centre of the plank where it broke, and that such a plank would not hold two men, that there was a foreman present but that he took no part in selecting the planks used like this one as temporary stagings, and that the planks used for that purpose were selected by workmen on the ground from a pile of planks which had been delivered at the side of the street for general use in the work, and were handed up to other workmen on the uprights of the structure as they called for them. *Held,* that there was no evidence of negligence on the part of the defendant, which performed its whole duty toward the plaintiff by furnishing enough sound planks and employing competent persons as his fellow workmen.

A witness who has been a contractor and builder for fourteen years, but who never has made a study of the bearing strength of wood, may be found not to be qualified as an expert to testify to the weight which would be borne by a spruce plank twenty feet long, twelve inches wide and two inches thick, with a knot as large as the palm of a man's hand in the middle of it.

TORT for personal injuries, from the breaking of a plank used as a staging, on which the plaintiff was standing while at work in the employ of the city of Worcester as a laborer in the construction of a certain sewer in that city, with a count alleging negligence of a superintendent of the defendant in regard to the construction of the staging and in ordering the plaintiff to work upon it, a second count alleging a failure of the defendant to furnish the plaintiff with suitable appliances for his work, and a third count, added by amendment, alleging a defect in the ways, works and machinery of the defendant.  Writ dated June 4, 1900.

At the trial in the Superior Court *De Courcy,* J. ordered a verdict for the defendant; and the plaintiff alleged exceptions.

*C. C. Milton, G. A. Gaskill & H. H. Fuller,* for the plaintiff.

*A. P. Rugg,* for the defendant.

LORING, J.  The plaintiff was one of a gang of fourteen or fifteen city employees engaged in setting up a portable overhead railway, used for carrying buckets back and forth in excavating a trench to hold a sewer pipe.  The railway was made up of sections sixteen feet long.  Each section consisted of two upright joists at each end of the section, braced across, and carrying a girder on the braces on the top of the uprights.  The railway for the travellers carrying the buckets back and forth was suspended from and below this girder.  The plaintiff and another man were screwing the track on to the girder over the second section, when the staging broke on which they were standing, and the accident happened which is here complained of.  The staging for each section consisted of a single plank which was laid on two cross braces, one at each end of the section, resting on and in iron hooks driven into the forward end of the uprights for the purpose.  The number of sections in the railway in question was variously stated to be eight, ten and twelve, but it appeared that all of them had been set up in the forenoon of the day in question, and also that the temporary planks which made the staging for screwing on the railway had been laid in that forenoon in all the sections.

After dinner the plaintiff and another man went to the middle of the plank on the second section, to screw on the railway, when, as we have said, the plank broke.  The planks used for these stagings were taken from a pile of new spruce planks twelve inches wide and two inches thick, which had been delivered on the side of the street that forenoon for general use in the work.  Four or five had been taken to construct the platform for the engine, and they " were sometimes used for other purposes.  They put them in the ditch as sheathing."  The number of planks in the pile when they were delivered was estimated to be from twenty to thirty, and the number left at the end of the day's work in question from nine to ten.  The work was in charge of one Fox, who was foreman in the defendant's sewer department.  There was no testimony that Fox selected any of the planks to be put on the braces to form the temporary stagings, or that he took any part in putting them up beyond the fact that he was present superintending the work generally, if that be a fact which under the circumstances of this case warrants that conclusion.

The plaintiff's witnesses testified that when the time came to put on the planks, the men who were up on the uprights would call for a plank ; then the men who were on the ground would get one from the pile and either hand it up " by forks made to lift the plank," or haul it up by a rope thrown over the girder. The planks used as a staging from which to screw the track on to the girder are taken off and the braces on which they are laid are taken down when the work of putting the track in place is done.

It appeared that there was a knot as large as the palm of a man's hand in the centre of the plank where it broke, and that such a plank would not hold two men.

It is plain that the staging in question was a staging even more temporary in character than the stagings in question in *Kelley* v. *Norcross*, 121 Mass. 508; *Colton* v. *Richards*, 123 Mass. 484; *Killea* v. *Faxon*, 125 Mass. 485 ; *Clark* v. *Soule*, 137 Mass. 380; *Hoppin* v. *Worcester*, 140 Mass. 222 ; *O'Connor* v. *Neal*, 153 Mass. 281 ; *Kennedy* v. *Spring*, 160 Mass. 203; *Adasken* v. *Gilbert*, 165 Mass. 443; *Brady* v. *Norcross*, 172 Mass. 331; *Callahan* v. *Phillips Academy*, 180 Mass. 183. It was more like the staging in question in *Morris* v. *Walworth Manuf. Co.* 181 Mass. 326.

The case before us is a case where the men on the uprights called for the planks as they were needed and the workmen on the ground selected them from the pile of planks provided for general use. In such a case the master performs his whole duty by furnishing enough sound planks and employing competent persons as fellow workmen.

It differs from *Arkerson* v. *Dennison*, 117 Mass. 407. In *Arkerson* v. *Dennison* " The plaintiff was injured by the falling of a staging, upon which he was directed to go by the defendant," and " the staging had been erected before the plaintiff entered the employment of the defendant," in the words used by Wells, J. in beginning his opinion in that case. And further, the testimony given by Mehan, who with Bennett did the work of constructing the staging in that case, warranted the finding that the work of constructing the staging had not been intrusted to the workmen and was retained by the defendant.

In the case at bar we do not think that the testimony of the

superintendent of sewers warranted a finding that it was the duty of Fox, who had general superintendence of the work, to see that this staging was safe.

In *Brady* v. *Norcross*, 174 Mass. 442, 448, also relied on by the plaintiff, there was evidence that the defect in the staging was called to the attention of one who was a superintendent within the employers' liability act.

The case does not come within *McIntyre* v. *Boston & Maine Railroad*, 163 Mass. 189. The rule there applied is the rule where a manufactured instrument is supplied by the master (see *Callahan* v. *Phillips Academy*, 180 Mass. 183, 186, 187, and *Colton* v. *Richards*, 123 Mass. 484, 487,) and does not apply to a case where material is furnished out of which an instrument is to be manufactured. Although the stagings for each section were made by laying a single plank on the braces when they had been put in position, we do not think that the planks come within the rule as to manufactured articles.

The plaintiff relies on *Prendible* v. *Connecticut River Manuf. Co.* 160 Mass. 131, in support of his contention that the judge was wrong as matter of law in finding as a fact that a witness who had been a contractor and builder for fourteen years, but who never had made any study with reference to the bearing strength of wood, was not qualified as an expert to testify to the weight which a spruce plank would bear which was twenty feet long, twelve inches wide and two inches thick, with a knot as large as the palm of a man's hand in the middle of it. But there is nothing in *Prendible* v. *Connecticut River Manuf. Co.* which supports this contention. In that case it was held that an engineer could be allowed to give his opinion as to whether a staging erected in a specified way could safely be trusted to carry a particular weight on the ground " that a person who has made a special study of the strength of materials and the proper mode of building structures to sustain weight " may be allowed so to testify. No question was raised as to that engineer's being qualified as an expert, and so far as the case goes it supports the ruling made at the trial.

*Exceptions overruled.*