THE PERSIAN MONARCH.

BRIODY v. THE PERSIAN MONARCH.

(Circuit Court of Appeals, Second Circuit. April 18, 1893.)

SHIPPING—INJURIES TO STEVEDORE—FELLOW SERVANTS.

Plaintiff, a foreman stevedore, was requested by a fellow stevedore to pass a derrick fall rope, in plaintiff's charge, with which to haul a lighter alongside the ship on which they were at work. The derrick was unsuited to this purpose, and the rope broke, causing an injury to plaintiff, who was looking on. There were suitable appliances at hand for hauling the lighter alongside, in the use of which plaintiff and his fellows were skilled. The stevedores were not directed by the officers to use the derrick on this occasion, but they had been in the habit of using it, without objection

from the officers. *Held*, that plaintiff was injured by the negligence of his fellow servant, and was not entitled to recover. 49 Fed. Rep. 669, reversed.

Appeal from the District Court of the United States for the Eastern District of New York.

In Admiralty. Libel by Briody against the steamship Persian Monarch for personal injuries. There was a decree for libelant, (49 Fed. Rep. 669,) and the libelee appealed. Reversed.

James Thomson, for appellant.

Wm. Allan, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The libelant was one of a number of stevedores employed by the corporation owning the steamship in loading and unloading its vessels. He was injured in consequence of the breaking of a guy rope, one of the appliances of a derrick provided for the purpose of loading cargo into, and unloading it from, the hold of the steamship. He was foreman of the gang at an after hatch where cargo was being discharged, his special duty being to attend the fall rope of the derrick at that hatch. Cargo was being taken on board at some of the other hatches, and the stevedores at one of those hatches concluded to use the derrick to haul a lighter alongside which was lying by ready to deliver cargo. Their foreman asked the libelant to pass him the fall rope of the derrick, and the libelant did so. It was fastened to the lighter, which was large and heavy, and in the attempt to haul the lighter against the tide, and while the libelant was looking on, the guy rope of the derrick broke, and the boom struck libelant in the chest. The steamship was provided with proper ropes and appliances to be used in case it became desirable to haul lighters alongside, but the derrick was not adapted or designed for such a use; and this was well understood by the stevedores, including the libelant, who was an experienced man, and had worked for the owner of the steamship for several years. It appears, however, that on previous occasions the stevedores, instead of using the ordinary appliances which were at hand for hauling lighters alongside, had used the derrick for the work; and this, on some occasions when the officers of the steamship were present, and must have been cognizant of what was being done. The guy rope broke because the derrick was subjected to the extraordinary strain put upon it by attempting to haul the lighter alongside under the existing conditions. The case presents the question whether the accident was caused by any negligent conduct or breach of duty on the part of the employer, or whether it was caused by the negligent acts of the libelant's fellow servants, in which he to some extent participated. It was of course obligatory upon the steamship owner, as employer, to supply and maintain suitable instruments and means with which to enable the stevedores to carry on their work, and to exercise reasonable diligence to see that such appliances were at all times safe for use. It had fulfilled its general duty in that.

behalf; it had furnished all the requisite appliances for the various incidents of the service to be performed by the stevedores; and it is not asserted that any of these appliances were defective or unsafe for their appropriate uses. It was under no obligation of especial supervision, because the stevedores were experienced men, who knew which appliances to select, and how to use them. It was no part of its obligation as an employer to furnish a derrick which would be strong enough in all its parts for the hauling of vessels, or safe in any respect for an illegitimate use. If it was remiss in any sense it was because the stevedores had been permitted, more or less frequently, to put the derrick to a use for which they knew it was not intended. If the stevedores had been forbidden by regulations, or explicitly cautioned, not to use it except for the loading or unloading of cargo, they would have been no better informed than they were when their employer had placed at their disposition for the safe performance of their duties the various appliances, each adapted to its appropriate use, and known to them to be intended for that use. We know of no principle which imputes negligence to an employer, under such circumstances, merely because he permits his workmen to relax his regulations, or disregard his general instructions or advice, when they choose to do so for their own convenience, and with knowledge of the risk. It would be unreasonable and unjust to shift upon the employer the consequences of a risk to which he has not exposed his workmen, but which they have voluntarily and unnecessarily taken upon themselves for their own ease or whim. The case is very similar in principle to that of Griffiths v. Gidlow, 3 Hurl. & N. 648. In that case a workman employed with others in sinking a pit, while at the bottom of the pit, was injured by the fall of a tub of water. In a suit against the employer for negligence, the evidence was that the tackle was imperfect, not being pulled with a safe hook, and that a jiddy should have been used. A jiddy had been provided by the employer, who was at the work several times each day, but he had been informed by the plaintiff that the workmen were not using it. The court held, among other propositions, that, assuming the accident to have arisen from the neglect to use the jiddy, the employer, having provided a proper apparatus, was not liable for the neglect of the plaintiff's fellow workmen in omitting the use of it.

The libelant participated in the illegitimate use of the derrick, not very actively, but sufficiently to identify himself as an actor in the transaction. Like the other stevedores, therefore, he assumed the risk of its being so used. If the derrick had been used by the order of any of the officers of the steamship, or of any one not a fellow servant of the libelant, but in authority over him, different considerations would be suggested. As it is, he has no cause of action against the steamship owner, and his libel should have been dismissed by the court below. The decree is reversed, and the cause remitted to the district court, with instructions to dismiss the libel, with the costs of that court and of this appeal.